<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK MCCLOUD WARNER, | Civil Action No.: 03-1723 (JLL) |
| Plaintiff, | |
| v. | **O P I N I O N  &  O R D E R** |
| LYDELL SHERRER, et al., | |
| Defendants. | |

**LINARES, District Judge.**

  This matter comes before the Court on the motion for summary judgment of defendants Lydell Sherrer (hereinafter "Sherrer") and Bernard Grey (hereinafter "Grey") (hereinafter collectively "defendants"),[1] pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the motion of <u>pro se</u> plaintiff, Mark McCloud Warner (hereinafter "plaintiff" or "Warner") opposing summary judgment.  Plaintiff also moves before this Court seeking reimbursement for costs and fees associated with litigation of this matter.

  Plaintiff, a former inmate at Northern State Prison (hereinafter "NSP"), filed a Complaint against multiple defendants, including Lydell Sherrer, Administrator of NSP, and Bernard Grey, Senior Corrections Officer, alleging claims under 42 U.S.C. § 1983 for violations of his constitutional rights during his incarceration at NSP between October 26, 2002 and July 15, 2003

---

[1]The remaining defendants, Adedayo Odunsi, M.D. and Myriam Sterlin, M.D., are medical providers and are not part of this motion.

due to exposure to unreasonably high levels of environmental tobacco smoke (hereinafter "ETS")

and denial of medical treatment for his asthma condition.

The Court decides this motion without oral argument pursuant to Rule 78 of the Federal

Rules of Civil Procedure.  For the reasons that follow, defendants' Sherrer and Grey's motion for

summary judgment is GRANTED, plaintiff's motion opposing summary judgment is DENIED,

and plaintiff's motion for costs and fees is DENIED.

## BACKGROUND FACTS

Since the Court writes only for the parties, an underlying familiarity of the facts will be

assumed, and only such background that is relevant to the present motion will be presented.  As

an initial matter, plaintiff's Complaint involves only his time spent at NSP between October 26,

2002 to July 15, 2003.[2]  On June 9, 2005, this Court was notified that plaintiff was released from

custody.[3]

On May 15, 1994, the New Jersey Department of Corrections ("DOC") implemented a

No Smoking Policy, limiting smoking in prison facilities.  On July 1, 2001, the DOC reaffirmed

its No Smoking Policy to prohibit smoking in all indoor areas of department buildings and

institutional towers.  According to the DOC, NSP has allegedly been a smoke-free facility since

---

[2]There is currently a motion to amend the pleadings, before Magistrate Judge Hedges, to add claims that arose after July 15, 2003. [CM/ECF Docket Entry #70].  Those claims are not part of this motion and the Court is not addressing them at this time.

[3]Since plaintiff is no longer in prison, any claims for injunctive or declaratory relief are now moot.  Plaintiff still seeks money damages; therefore the case is still ripe.  "When an inmate is dismissed from a prison system, there is no longer a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of injunctive or declaratory relief."  Johnson v. Pearson, 316 F. Supp. 2d 307, 315 (2004) (internal citations omitted).

May 1994.  As with the earlier policy, the July 2001 reaffirmation subjects inmates to formal disciplinary charges for "smoking where prohibited" in violation of N.J.A.C. § 10A:4-4.1(a)*553.[4]  An initial ninety day grace period utilizing verbal warnings introduced the reaffirmation of the July 2001 policy.

Defendants assert that all inmates and each Inmate Liaison Committee received notice of the No Smoking Policy.  Defendants further assert that NSP posted the No Smoking Policy in a memorandum and published it in the inmate handbook received by all inmates.  The policy also required that inmates be verbally informed of its implementation.  Plaintiff does not dispute that NSP has a No Smoking Policy for all indoor areas.

NSP staff enforce the No Smoking Policy by issuing formal disciplinary charges or on-the-spot charges for smoking where prohibited.  From January 1, 2000 to June 23, 2004, twenty-five inmates were charged and found guilty of violating the policy.  This number does not reflect on-the-spot charges that NSP does not document.  From January 1, 2004 to February 8, 2005, the Court counts thirty-five violations of the policy for which inmates were charged and found guilty.  Plaintiff alleges that NSP staff do not consistently enforce the policy, as both staff and inmates continue to smoke indoors at the prison.

Plaintiff has been diagnosed as having asthma, and alleges that medical staff documented the condition in the written records at NSP.  Plaintiff also alleges that NSP did not enter his written medical records into the NSP computer system until December 12, 2003.  In his written records, there was an entry by Alyn R. Caulk, M.D., at Riverfront State Prison, dated March 8, 2001.  That entry provided a permanent housing restriction for Warner, specifying that "pt must

---

[4] "An inmate who commits one or more … prohibited acts shall be subject to disciplinary action and a sanction …."  N.J.A.C. § 10A:4-4.1(a).

be in a smoke-free cell - He cannot be housed with an inmate who smokes." This is also acknowledged in a letter from Richard P. Cevasco, Assistant Director of the DOC's Division of Operations, dated January 2, 2003. (Warner Certif. dated Dec. 12, 2004, Ex. G-4). Mr. Cevasco indicated in his letter that he was forwarding a copy of Dr. Caulk's memo and his own letter to Lydell Sherrer, Administrator of Northern State Prison, to make him aware of the issue. (Id. at Ex. G-5). Although from a period prior to the allegations in plaintiff's Complaint, there is also a notation in plaintiff's medical records by Stephanie Kudla, RN, dated May 27, 2002, which states:

> INMATE REQUESTING A NON SMOKING CELL. EXPLAINED THAT ALL CELLS ARE ACCORDING TO DOC NON SMOKING CELLS AND IT IS DOC'S RESPONSIBILITY TO [E]NFORCE THIS RULE AS MEDICAL CANNOT PUT IN A CELL CHANGE REQUEST AS PER DOC'S RESPONSE THAT ALL CELLS ARE DEEMED AS NON SMOKING CELLS EVEN THOUGH INMATE HAS AN ORDER TO BE HOUSED IN A SMOKE FREE CELL. ENCOURAGED INMATE TO DISCUSS WITH HOUSING OFFICER FOR POSSIBLE CELL CHANGE IF HIS CELL MATE IS SMOKING I[N] HIS CELL.

(Id. at Ex. G-6).

Defendants assert that, during the time at issue, plaintiff never complained to the medical staff about his asthma, his alleged health problems relating to a cell-mate that smokes, or his excessive exposure to ETS. In a memorandum to plaintiff, dated June 30, 2003, Angel L. Santiago, Assistant Superintendent, stated that: "As indicated your medical records show only a patient report of asthma history dated 4/23/2001, with no evidence of diagnosis, treatment or medications prescribed for asthma since that date." (Id. at Ex. G-7).

Plaintiff states, however, that on numerous occasions he complained to medical staff about having problems such as shortness of breath and difficulty breathing as a result of exposure

to ETS.  Furthermore, plaintiff states that medical personnel refused to see him on numerous occasions, even when he had an emergency pass due to difficulty in breathing from smoke inhalation.  Although medical staff treated him for illness on several occasions, plaintiff contends that they refused to address his asthma.

Plaintiff is suing Lydell Sherrer, Administrator of NSP, and Senior Corrections Officer, Bernard Grey, for allegedly subjecting him to high levels of environmental tobacco smoke, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  Due to the volume of inmate grievances filed, Sherrer delegates the task of reviewing such grievances to a member of his staff.  Sherrer alleges to have no recollection of ever personally receiving or reading any complaint directly from plaintiff regarding ETS.  The State defendants do not contend that inmates do not smoke in their cells.  Rather, defendants contend that it is clear such behavior is prohibited and that inmates will be disciplined when they are caught.

Plaintiff contends, however, that defendant Sherrer had first hand knowledge of plaintiff's health issues as the result of discussions between the two on numerous occasions between October 26, 2002 and July 15, 2003.  Plaintiff further states that during the time period from which this Complaint stems, defendant Grey forced plaintiff to double bunk with inmates who smoke.  Plaintiff also alleges that defendant Grey refused on numerous occasions to inform medical staff that plaintiff was suffering from asthma attacks.

Furthermore, plaintiff states that tobacco smoke and other pollutants pass through the ventilation system at NSP.  Plaintiff claims to have endured swollen glands and unremitting chest and lung pain during the nine month period he was denied asthma care.  Plaintiff also alleges that

NSP staff notified other inmates that plaintiff complained about smoking in the jail, and as a result, other inmates tried to fight plaintiff.

Warner's own Affidavit dated April 12, 2003 asserts that:

At present the smoke is coming through the vent system heavily.  Environmental Exposure to tobacco smoke has even endangered my future health.  Also, I have the witnesses and documents the prove, I have be seriously harmed.  Today, I was denied emergency medical attention by officers SCO, Bernard Grey and SCO, Garcia, and Nurse Dorothy Okeke,. . . after I was expose to high levels of second hand smoke and started experiencing chest pains and breathing problems.  I fear for my health and safety in this prison.  The nurse refuse to check my vitals and it hurts now when I take deep breaths.

(Warner Certif. dated Dec. 12, 2004, Ex. D, Warner Aff. ¶5).

Defendants additionally point out that during the time plaintiff alleges he was complaining to defendants about ETS, he was purchasing cigarettes and tobacco rolling kits from the commissary.  Plaintiff alleges to have purchased tobacco products and cigarettes because they are used as a form of currency in prison.

In addition to his own Affidavit, Warner has submitted Affidavits from four other inmates.  One such Affidavit is from Clarence Haley, an inmate at NSP.  (Warner Certif. dated Dec. 12, 2004, Ex. B, Haley Aff.).  He alleges that he is a non-smoker that is being housed with cell-mates that are smokers.  (Id.).  He states "I am a NON-smoker who is made to INHALE harmful second-hand cigarette smoke which is very HAZARDOUS to my health."  (Id.).  Mr. Haley also asserts that "Prison officials are deliberately putting NON-smoking prisoners in harms way by housing them in the same cell with prisoners who smoke."  (Id.).

Another is by Pedro Ortiz, an inmate at East Jersey State Prison.  (Warner Certif. dated Dec. 12, 2004, Ex. C, Ortiz Aff.).  In his Affidavit he stated the following:

2.  I am a witness for Mark McCloud Warner, that don't make no differance, that theres a no smoking policy.  Inmates and officers alike still be smoking on the tiers' in the cells.  Makes no real different.

3.  Im one of the ones, who be braiding Warner's hair for 3 pac of smokes.  And I smoking in my cell we got permission to burn in out cells.  Where's els, we've gone smoke round here?  Shoot we cant go noweres locked ins all day.

4.  Police won't cut the fresh air ons, so it be even tos hot for me and smoky and I smoke.  Thats all I's no -

(Id.).

Fernando Ramos was an inmate at NSP for about a month when he signed an Affidavit

for Warner.  (Warner Certif. dated Dec. 12, 2004, Ex. E, Ramos Aff. ¶1).  He stated:

I have witness, the abuse and mistreatment of Mark Warner.  Both First and Second shift, has put Warner into the cells with smokers.  On purpose, now he has medical restriction to be in a smoke free cell and that he cannot be housed in a cell with a inmate who smokes.  Yet these official mention in this complaint deliberately violates Warner 8th and 14th Amendment right.  These officials new of and still disregarded Warner's serious health risk.

(Id.).

Lastly, Felix Rodriguez wrote an extensive Affidavit for Warner despite his being at NSP

for only about a month.  (Warner Certif. dated Dec. 12, 2004, Ex. F, Rodriguez Aff. ¶1).  He

stated:

On March 21, 03 or around this date I witness, SCO Bernard Grey put a smoker into the cell with the plaintiff.  This officer was acting with deliberate indifference, because he read Warners medical restriction, specifying that Warner must be in a smoke free cell, that he can note be housed with a inmate who smoke.  I even read the housing restriction, before I decided to get involved.

(Id.).  Mr. Rodriguez goes on to explain that Warner's cell-mate was determined to smoke

despite the direct order he received not to.  This resulted in "a fight that no one witness."  (Id. at

¶2).  He also contends that "Warner complaint of chest pain and breathing problems related to

environmental tobacco smoke (ETS)."  (Id. at ¶3).  Additionally, Mr. Rodriguez states that "The

officers sometimes refuse to even notify the emergency complaint of Warner, to the nurses, and on top of that had power house cut the air off trying to kill the inmate.  All because they smoke in the building despite the law."  (Id. at ¶4).  Lastly, he states that "The Administrator knows of the abuse and the medical needs of Warner and has failed to remedy the ongoing occurrences."  (Id. at ¶7).

As for plaintiff's motion seeking reimbursements, Plaintiff alleges that he was paying for legal copying and postage while incarcerated, violating his status as an indigent.  As a result, plaintiff states that he had been unable to buy necessary amenities such as soap and deodorant.  Defendants assert that NSP records indicate that plaintiff was not actually paying for any litigation costs.

## DISCUSSION

### A.    Summary Judgment Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Once the moving party has met its burden, it is incumbent upon the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The non-movant must "do more than simply show that there is some metaphysical doubt as to the material

facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, if

the non-movant's evidence on any essential element of the claims asserted is merely "colorable"

or is "not significantly probative," the court should enter summary judgment in favor of the

moving party.  Anderson, 477 U.S. at 249-50.  In other words, the non-moving party must

"'make a showing sufficient to establish the existence of [every] element essential to that party's

case, and on which that party will bear the burden of proof at trial.'"  Serbin v. Bora Corp., 96

F.3d 66, 69 n.2 (3d Cir. 1996) (quoting Celotex Corp., 477 U.S. at 322).  Further, in determining

whether there remain any actual issues of factual dispute, the court must resolve all reasonable

doubts in favor of the nonmoving party.  Matsushita, 475 U.S. 574; Meyer v. Riegel Prods.

Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

At the summary judgment stage, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  Anderson, 477 U.S. at 249.  The Supreme Court has held that there is "no genuine

issue as to any material fact," where there is a "complete failure of proof concerning an essential

element of the nonmoving party's case" because all other facts are rendered immaterial.  Celotex

Corp., 477 U.S. at 323.  Therefore, the "moving party is 'entitled to a judgment as a matter of

law' because the nonmoving party has failed to make a sufficient showing on an essential

element of her case with respect to which she has the burden of proof."  Id.  Rule 56(c) mandates

the entry of summary judgment "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  Id. at 322.  In First Nat'l Bank v. Cities Service Co., the

Supreme Court stated that while it recognized "the importance of preserving litigants' rights to a

trial on their claims," the Court refused "to extend those rights to the point of requiring that anyone who files a [] complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."  391 U.S. 253, 289-90 (1968).

Courts review pro se pleadings carefully and liberally and interpret such pleadings "to raise the strongest arguments that they suggest."  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).  The court is not required, however, "to accept legal conclusions either alleged or inferred from the pleaded facts."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Rather, summary judgment may be appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45 (1957).

The Court's present task is to determine whether genuine issues of material fact exist and whether defendants are entitled to judgment as a matter of law.

**B.      Qualified Immunity**

Defendants assert that summary judgment in their favor is proper on the basis of qualified immunity.  Qualified immunity may shield government officials from civil damages in certain instances.  "Qualified immunity requires a two-step analysis.  First, the Court must determine whether the plaintiff has alleged the violation of a constitutional right.  Second, the Court must determine whether that right was 'clearly established' at the time of the alleged violation." Weaver v. Clarke, 45 F.3d 1253, 1255 (1995); see Saucier v. Katz, 533 U.S. 194 (2001).

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S.

25, 31 (1993); Estelle v. Gamble, 429 U.S. 97 (1976).  Thus, the plaintiff alleges a violation of a constitutional right, grounded in the Eighth Amendment.  In the context of this case, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs, or to conditions posing a substantial risk of serious current or future harm.

Assuming that plaintiff can establish a violation of a constitutional right, in order to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Defendants argue as such that "if there are no cases of controlling authority in the jurisdiction in question, and if other appellate federal courts have split on the question of whether an asserted right exists, the right cannot be clearly established for qualified immunity purposes."  (Defs.' Brief in Support of Motion for Partial Summ. J. 13).  As the Supreme Court noted in Saucier, however, an official is not "entitled to qualified immunity simply on the argument that courts had not agreed on one verbal formulation of the controlling standard."  533 U.S. at 202-03.  Furthermore, the rights claimed by plaintiff, related to ETS exposure, have clearly been recognized by the United States Supreme Court in Estelle and Helling.  As such, defendants are not entitled to qualified immunity because freedom from unreasonably high levels of ETS is a "clearly established" constitutional right.

**C.**     **42 U.S.C. § 1983 - Eighth Amendment ETS Claims**

**1.**     **Present Injury Claims (Harm Occurring While in Prison)**

_____The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting cruel and unusual

punishment on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).

The "treatment a prisoner receives in prison and the conditions under which he is confined are

subject to scrutiny under the Eighth Amendment."  Helling, 509 U.S. at 31.  This proscription

against cruel and unusual punishment requires that prison officials provide inmates with adequate

medical care.  Estelle, 429 U.S. at 103-04.

     In order to set forth a cognizable claim for a violation of his right to adequate medical

care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison

officials that constitutes deliberate indifference to that need.  Id. at 106.

### a. Objective Component

     To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his

medical needs are serious.  "Because society does not expect that prisoners will have unqualified

access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment

violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious

medical needs include those that have been diagnosed by a physician as requiring treatment or

that are so obvious that a lay person would recognize the necessity for doctor's attention, and

those conditions which, if untreated, would result in lifelong handicap or permanent loss.

Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied,

486 U.S. 1006 (1988).

     Plaintiff alleges that he often complained of respiratory problems and that exposure to

ETS exacerbated his asthma.  Although plaintiff's asthmatic condition was not in NSP's

electronic medical file, plaintiff alleges that he often told medical staff about his condition, and

that it was diagnosed and recorded in the written records.  Plaintiff further alleges that medical

staff did not initially respond to plaintiff's asthmatic condition.  Such complaints, if true, may

establish a constitutional violation.  Johnson v. Pearson, 316 F. Supp. 2d 307, 320 (1994).

However, "other than the plaintiffs' speculation, no evidence has been presented to

affirmatively link ETS to any current health problem."  Meo v. Wall, No. 01-467, 2003 U.S.

Dist. LEXIS 18240, at *10 (D.R.I. Sept. 11, 2003) (granting defendants summary judgment

motion on plaintiff's ETS claim where little to no evidence was provided by plaintiff outside of

the allegations in his Complaint).  Thus, while plaintiff's exposure to second-hand smoke might

have been unwelcome and unpleasant, and may have caused plaintiff some discomfort, such

unsubstantiated assertions are not sufficient to establish a causal connection between plaintiff's

asthma condition, during the relevant time frame, and exposure to unreasonably high level of

ETS.  See Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001).

It is now undisputed that plaintiff has asthma, and that a doctor did previously indicate

that plaintiff should be housed in a smoke-free environment.  However, there is no question of

fact as to whether, during the time frame at issue, plaintiff adequately alleged a serious medical

need within the first prong of Estelle because he has not produced any medical evidence

indicating that during this time he was seeking medical treatment for this allegedly serious

asthma condition.  See, e.g., Meo, 2003 U.S. Dist. LEXIS 18240, at *8 (finding that plaintiffs

failed to demonstrate that the ETS that they were exposed to caused them to suffer 'serious'

current health problems where they had no reported medical condition which could have been

aggravated by ETS).  The extensive medical records produced by the parties repeatedly reveal,

under "Problem/Diagnosis List," the following: depressive disorder, history of asthma as per

patient, hypertension, obesity, family history of DM, hypermetropia, astigmatism, history of

hemorrhoids, flat foot, acne, hyperlipidemia, anal fistula as per inmate's verbal report.  These records further reveal that throughout the relevant time frame, October 26, 2002 through July 15, 2003, plaintiff had many visits to a nurse or doctor for different maladies, none of which were respiratory or asthma related.  No medical record has been produced evidencing that plaintiff reported complaints for respiratory or asthma problems, let alone any related to exposure to ETS.  While there is one reference to a nurse discussing his placement in a cell with a smoker, there is no indication that he was suffering from any medical condition as a result of his confinement with a smoker.  Further, that reference by the nurse was made in May 2002, approximately five months prior to the time frame at issue in plaintiff's Complaint.  Therefore, plaintiff fails to meet the first prong of Estelle[5] and summary judgment must be granted.

### b. Subjective Component

Although defendants are entitled to summary judgment on this claim, due to plaintiff's status as a pro se litigant, the Court will entertain an analysis of the subjective component.  The second prong of the Estelle inquiry requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  "[A] prison official cannot be held liable under the *Eighth Amendment* … unless the official knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837 (emphasis in original).  Thus, the official must both be aware of the facts from which the inference could be drawn, and he must

---

[5]In the event that plaintiff asserts a denial of medical care claim against defendants Grey and Sherrer, plaintiff has likewise failed to substantiate his allegations that he was prevented from seeing a medical provider for his asthma condition.  As with the ETS claim, plaintiff has not established that he suffered from serious respiratory problems during this time frame.

also actually draw that inference.  Id.  A prisoner's subjective dissatisfaction with his medical

care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp.

2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729

F.2d 1453 (4th Cir. 1984).

> Where prison authorities deny reasonable requests for medical treatment,
> however, and such denial exposes the inmate 'to undue suffering or the threat of
> tangible residual injury,' deliberate indifference is manifest.  Similarly, where
> 'knowledge of the need for medical care [is accompanied by the] ... intentional
> refusal to provide that care,' the deliberate indifference standard has been met.

Lanzaro, 834 F.2d at 346 (citations omitted).

Thus, a claim is adequately stated under the second prong of Estelle when a plaintiff

alleges "that officials had subjective knowledge of a serious medical need *and* recklessly

disregarded the … risk."  Hinton v. Williams, No. 02-357, 2005 U.S. Dist. LEXIS 3573, at *6-7

(D.D.C. Feb. 28, 2005) (emphasis added).  In order to prevail, plaintiff needs to further

demonstrate that exposure to unreasonably high levels of ETS caused the injuries of which he

complained.  Johnson v. Goord, No. 01-9587, 2004 U.S. Dist. LEXIS 19658, at *49 (S.D.N.Y.

Sept. 29, 2004) (granting summary judgment against plaintiffs that brought suit claiming that

exposure to ETS aggravated their asthma because they failed to do any more than demonstrate

isolated incidents of non-compliance with a prison wide ban on smoking).  Further, "[t]he

adoption of [a] non-smoking policy rebuts the allegation that an official ignored and was

deliberately indifferent to the health risks of ETS."  Hinton, 2005 U.S. Dist. LEXIS 3573, at *11;

see also Helling, 509 U.S. at 36 (the existence of a non-smoking policy "bear[s] heavily on the

inquiry into deliberate indifference.").

In opposing a motion for summary judgment, a plaintiff may not rely solely upon the allegations in the Complaint.  Rather, plaintiff must identify facts and evidence in the record which support his claims.  Meo, 2003 U.S. Dist. LEXIS 18240, at *9.  Plaintiff in the instant case has produced sufficient evidence to support his claims that raise a question of material fact.

Plaintiff claims that defendant Grey was aware of his medical restriction, and intentionally placed him in a cell with a smoker.  He also states by certification that defendant Sherrer, in particular, had first hand knowledge of his medical condition, and that his refusal to move plaintiff to a smoke-free facility amounts to deliberate indifference.  Sherrer alleges to have no recollection of ever personally receiving or reading any complaint directly from plaintiff regarding ETS.  He states that due to the volume of inmate grievances filed, however, Sherrer delegates the task of reviewing such grievances to a member of his staff.  "The manner in which the grievances were handled does not show any deliberate indifference to the merits of his complaints but reflects the on-going difficulty in ensuring full compliance with existing policies."  Goord, 2004 U.S. Dist. LEXIS 19658, at *54 (finding that inmate grievances are typically considered in an appropriate manner, regardless of the standard of review used by the institution).

These facts alone, raise a question about whether defendants Sherrer or Grey knew about and disregarded the risk that ETS exposure posed to the plaintiff, thus there is a material issue as to the second prong of Estelle.  Cf. Longo v. Barbo, No. 97-1827, 1997 U.S. Dist. LEXIS 11638, at *11 (D.N.J. July 16, 1997) (granting summary judgment in favor of Lydell Sherrer when an inmate brought suit for an Eighth Amendment ETS violation).  Although plaintiff has raised a

question of material fact as to the second prong of Estelle, it is immaterial because the Court has already granted summary judgment on this claim, as the two prongs are conjunctive.

To the extent that plaintiff's Complaint has alleged a claim for failure to protect him from assaults by fellow inmates, the evidence presented in opposition to defendants' motion for summary judgment fails to support such a claim. At most, plaintiff has alleged, without any supporting evidence, that defendants were negligent in placing him in a cell with a smoker that would assault him for reporting the inmate's smoking. "[N]egligent failure to protect an inmate from an attack by another inmate does not justify liability under 42 U.S.C. § 1983." Dawud v. Talasnik, No. 04-1015, 2005 U.S. Dist. LEXIS 16605, at *11 (D.N.J. Aug. 4, 2005) (citing Davidson v. Cannon, 474 U.S. 344, 347-348 (1986)). Therefore, plaintiff's allegation is insufficient to withstand a motion for summary judgment.

**2.     Future Injury Claims**

The Helling Court held that defendants can be liable for deliberate indifference to *future* harm to a plaintiff. 509 U.S. at 34 (rejecting petitioners claim that only deliberate indifference to *current* serious health problems of inmates is actionable under the Eighth Amendment). "Similar to present injury claims, courts require inmates prove both an objective and subjective component to an Eighth Amendment violation" in order to sustain a claim for future harm caused by exposure to ETS. Johnson v. Pearson, 316 F. Supp. 2d 307, 316 (E.D. Va. 2004). In particular, to be successful on an Eighth Amendment claim for future harm resulting from exposure to second-hand smoke, plaintiff must satisfy the objective and subjective elements of Helling, 509 U.S. at 35-36. Plaintiff must show that, acting with deliberate indifference,

defendants exposed him to unreasonably high levels of ETS that posed an unreasonable risk to his future health.  Helling, 509 U.S. at 35.

### a. *Objective Component*

To satisfy the objective element, plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS," and that the complained risk to plaintiff's health is considered "to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  Id. (emphasis in original).   The objective factor considers "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS."  Id.  In reviewing the objective component, the Court must be mindful of the circumstances surrounding plaintiff's incarceration, and whether the prison No Smoking Policy is "administered in a way that will minimize the risk to [plaintiff] and make it impossible for him to prove that he [was] exposed to unreasonable risk with respect to his future health. . . ."  Id. at 36.  The DOC's No Smoking Policy evidences that the DOC recognizes exposure to unreasonably high levels of ETS contravenes contemporary community standards.

Plaintiff alleges that the defendants violated his Eighth Amendment rights by subjecting him to future harm as a result of exposure to ETS.  Exposure to ETS would violate plaintiff's medical restriction that he be housed in a smoke-free environment.  However, plaintiff fails to offer evidence as to the "levels" of ETS to which he personally is exposed.  The mere fact that he is housed in a non-smoking facility, with a cell-mate that is a smoker does not indicate how much that cell-mate smokes in the cell or how frequently.  "Missing entirely from the plaintiffs' affirmative case was any objective evidence of the level of second-hand smoke."  Scott, 139 F.3d

at 942.  There is simply nothing in the record that explains to this Court the actual levels of ETS

in plaintiff's cell or to which he was exposed.  Compare Helling, 509 U.S. at 28 (finding that an

Eighth Amendment claim is stated where the plaintiff had a cell-mate that smoked five packs of

cigarettes a day); Davis v. State of N.Y., 316 F.3d 93, 100-01 (2d Cir. 2002) (reversing entry of

summary judgment and remanding where plaintiff asserted that he was housed in an area where

the majority of the inmates smoked, was surrounded by seven inmates who were chain smokers,

"such that 'the smell of smoke fills the air and enters my cell in a manner as though I was myself

smoking.'"), with Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001) (finding that

"sporadic and fleeting exposure to second-hand smoke might have been unwelcome and

unpleasant," but did not constitute "unreasonably high levels of ETS."); Oliver v. Deen, 77 F.3d

156, 159 (7th Cir. 1996) (finding that an inmate with mild asthma that shared a cell with a smoker

for 133 days failed to establish that he had been denied "the minimal civilized measure of life's

necessities."); Jones v. Kearney, No. 00-818, 2001 U.S. Dist. LEXIS 18631, at *7-8 (D. Del.

Nov. 2, 2001) (finding that plaintiff failed to demonstrate exposure to unreasonably high levels

of ETS where he was "only exposed to the limited amount of ETS, for a limited amount of time

each day, due to SCI's open air smoking policy.").

　　　　As previously stated, plaintiff has not presented evidence which shows he complained of

asthma or respiratory problems during the time frame at issue.  Many pages of medical records

were submitted to the Court and the most they reveal during this time frame, is a note indicating

that plaintiff reported a history of asthma.  These medical records show that plaintiff was

frequently treated for many ailments over the course of this time frame.  An absence of

respiratory complaints is notable.  Further, plaintiff has not presented any evidence

demonstrating a causal connection between his alleged asthma condition and an increased harm to him in the future from exposure to ETS.

To support his allegations, plaintiff has produced affidavits from four inmates. These affidavits fail to support plaintiff's burden. Without repeating the details of each affidavit, as they were quoted in the Background Facts section of this Opinion and Order, the Court will explain why each affidavit is insufficient evidence to meet plaintiff's burden of proof. Mr. Haley's affidavit fails to demonstrate the degree of ETS to which plaintiff is exposed, he sets forth no facts related to plaintiff, and fails to identify defendants Grey or Sherrer as the culpable parties. (Warner Certif. dated Dec. 12, 2004, Ex. B, Haley Aff.). The affidavit submitted by Mr. Ortiz has no evidentiary value because he is not even an inmate at NSP. (Warner Certif. dated Dec. 12, 2004, Ex. C, Ortiz Aff.). He does not explain the impact of ETS on plaintiff, or any details about plaintiff's exposure to ETS. (Id.). The next two affidavits are from inmates that had been at NSP for only about a month when they drafted the affidavits. Mr. Ramos submitted an affidavit that fails to identify the defendants as the participants in plaintiff's alleged constitutional deprivations, he did not address plaintiff's exposure to ETS or how plaintiff's health has suffered as a result of exposure to ETS. (Warner Certif. dated Dec. 12, 2004, Ex. E, Ramos Aff.). The affidavit submitted by Mr. Rodriguez only references one incident involving Grey that fails to rise to the level of an Eighth Amendment violation, and mentions his subjective belief that Sherrer was aware of plaintiff's conditions. (Warner Certif. dated Dec. 12, 2004, Ex. F, Rodriguez Aff.). He does not describe the levels of ETS in plaintiff's cell, nor does he describe the severity or frequency of plaintiff's medical complaints. (Id.).

These four affidavits fail to provide plaintiff with the evidentiary basis needed to support his cause of action.  "'Anecdotal accounts' of smoking at the jail are insufficient. . . . Rather, to prevail, plaintiff must provide some kind of 'scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that . . . injury to [his] health' was actually caused by exposure to ETS."  Meo, 2003 U.S. Dist. LEXIS 18240, at *7 (granting defendants summary judgment motion on plaintiffs Eighth Amendment ETS claim) (citations omitted); Scott, 139 F.3d at 941; Hinton, 2005 U.S. Dist. LEXIS 3573, at *9-10.  As such, "[t]estimony by fellow inmates that smoking was occurring at the facility is not the kind of objective evidence needed to establish an Eighth Amendment violation.  Id. at *9 (emphasis omitted).  In the absence of any evidence outside of affidavits from fellow inmates that do nothing more than demonstrate imperfect compliance at enforcing the No Smoking Policy, plaintiff fails to satisfy the objective prong of Helling.

He further fails to establish this prong because he has presented no *medical* evidence, in the form of affidavit or otherwise, as to the degree, severity or cause of his asthma and other complained of medical conditions, or as to the unreasonably high level of ETS in NSP.  "The mere possibility of increased risk of some ailment related to ETS exposure does not amount to a substantial risk of serious harm prohibited by the Eighth Amendment."  Meo, 2003 U.S. Dist. LEXIS 18240, at *14.

Viewing the facts in a light most favorable to plaintiff, his failure to provide any evidence of the seriousness or harmfulness which exposure to ETS has on his future health and the quantity of ETS to which he was exposed, compels the court to grant defendants' motion for summary judgment as to the present harm claim.  See First Nat'l Bank, 391 U.S. at 289-90.  The

Court need not analyze the subjective component because it is of no moment consider the Court's decision on the objective component.

### C.   Reimbursement of Fees and Costs

Plaintiff filed an additional motion seeking reimbursement for costs and fees associated with the litigation of this matter.  Plaintiff alleges that he was paying for legal copying and postage while incarcerated, violating his status as an indigent.  As a result, plaintiff states that he has been unable to purchase hygiene supplies from the commissary because defendants have compromised his account to cover costs of legal copying and postage.

As defendants assert, however, the computer-generated Trust Account Statement maintained by NSP for the period October 26, 2004 through November 15, 2004 shows that what plaintiff actually paid for was numerous sundry items at the institutions' commissaries, including hygiene supplies such as deodorant and floss, envelopes and stamps for personal correspondence, and snack food.  On the other hand, in accordance with plaintiff's status as an indigent, and the provisions of N.J.A.C. § 10A:31-15.3,[6] the Trust Account Statement indicates that the DOC has provided legal copying and postage at no charge.  Because plaintiff was not actually paying for his legal costs during his incarceration at NSP, defendants shall not be ordered to reimburse plaintiff for that which has not actually paid.

---

[6]N.J.A.C. § 10A:31-15.3 specifically provides as follows:
> (a) Inmates shall have access to legal supplies and services for preparing legal papers, such as:
> > 1. Writing paper;
> > 2. Pens;
> > 3. Reproduction equipment; and
> > 4. Large mailing envelopes.
> (b) The cost of the legal supplies noted in (a) above shall be borne by the inmate unless the inmate is indigent.

## <u>CONCLUSION</u>

For the reasons set forth above, it is on this 28th day of September, 2005,

**ORDERED** that defendants Lydell Sherrer, Administrator of NSP and SCO Bernard

Grey's motion for summary judgment [CM/ECF Docket Entry #30] is GRANTED; and it is

further

**ORDERED** that plaintiff's motion opposing summary judgment [CM/ECF Docket Entry

#37] is DENIED; and it is further

**ORDERED** that plaintiff's motion seeking reimbursement for costs and fees associated

with this matter [CM/ECF Docket Entry #42] is DENIED.


Dated: September 28, 2005                        /s/ Jose L. Linares_____
                                                 JOSE L. LINARES,
                                                 UNITED STATES DISTRICT JUDGE